## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICKY ALLEN SISCO,

               Plaintiff,

     v.

ANDREW SAUL, Commissioner of Social
Security,[1]

               Defendant.

CIVIL ACTION NO. 3:19-CV-00671

(MEHALCHICK, M.J.)

### MEMORANDUM OPINION

Plaintiff Ricky Allen Sisco ("Sisco") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Act. For the following reasons, the undersigned shall order the Commissioner's decision be **AFFIRMED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

In June 2017, Sisco protectively filed an application for Title II disability insurance benefits, claiming disability beginning June 1, 1999, due to traumatic brain injury, chronic obstructive lung disease, diabetes, sleep apnea, degenerative arthritis, inactive Hepatitis C, back pain, hypothyroidism, hearing loss, and alcohol dependence. (Doc. 8-5, at 5; Doc. 8-6, at 6). The Social Security Administration initially denied the application in August 2017,

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Nancy A. Berryhill with her successor, Social Security Commissioner Andrew Saul. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

prompting Sisco's request for a hearing, which Administrative Law Judge (ALJ) Theodore Burock held on August 31, 2018. (Doc. 8-2, at 29; Doc. 8-3, at 7). In a written opinion dated October 17, 2018, the ALJ determined that Sisco was not disabled through September 20, 2001, the date last insured, and therefore was not entitled to benefits under Title II. (Doc. 8-2, at 24). On February 4, 2019, the Appeals Council denied Sisco's request for review. (Doc. 8-2, at 2).

On April 18, 2019, Sisco filed the instant complaint. (Doc. 1). The Commissioner responded on June 26, 2019, providing the requisite transcripts from Sisco's disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Sisco raising two bases for reversal or remand.[2] (Doc. 19; Doc. 23).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[3] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance

---

[2] Sisco twice filed identical briefs in support of reversal. (Doc. 19; Doc. 20).

[3] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Sisco was disabled, but whether the Commissioner's determination that Sisco was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that "[Sisco] was not under a disability, as defined in the Social Security Act, from June 1, 1999, the alleged onset date, through September 30, 2001, the date last insured . . . ."[4] (Doc. 8-2, at 23). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §

---

[4] The ALJ first found that "[Sisco] last met the insured status requirements of the Social Security Act on September 30, 2001." (Doc. 8-2, at 18).

404.1520(a)(4).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)–(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Sisco] did not engage in substantial gainful activity during the period from his alleged onset date of June 1, 1999 through his date last insured of September 30, 2001." (Doc. 8-2, at 18). Thus, the ALJ's analysis proceeded to step two.

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to and considers step three. Here, the ALJ concluded that Sisco had three severe impairments: vision impairments, residuals of traumatic brain injury, and traumatic

brain injury.[5] (Doc. 8-2, at 18).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Sisco's impairments, considered individually or in combination, met or equaled the severity of a listed impairment. (Doc. 8-2, at 16). The ALJ specifically considered listings 2.02-2.04 (visual disorders), as well as listing 12.02 (neurocognitive disorders). 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 2.00, 12.00. (Doc. 8-2, at 19-20).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce

---

[5] The ALJ noted that there was minimal evidence that Sisco's other impairments required treatment during the relevant period, so determined they only minimally limited his ability to perform sustained work tasks and were not severe. (Doc. 8-2, at 18-19).

the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c). Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Sisco had the RFC to perform a full range of work except that he (1) "could never operate motor vehicles;" (2) "could never have been exposed to hazards such as unprotected heights or dangerous equipment;" (3) "was limited to performing routine repetitive tasks with a GED of 1-1-1;" and (4) "could interact occasionally with supervisors and coworkers and never with the public." (Doc. 8-2, at 20).

E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as "substantial gainful activity" that was performed within the past 15 years and for long enough for the claimant to learn how to perform it. 20 C.F.R. § 404.1560(b). "If the claimant can perform [her] past relevant work despite his limitations, [s]he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that "[Sisco] has no past relevant work," and proceeded to Step Five. (Doc. 8-2, at 22).

F.    STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's

ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

In his step-five analysis, the ALJ determined that Sisco was 44 years old on the date last insured, defined as a younger individual age 18-49 as set forth by 20 C.F.R. § 404.1563, and has "at least a high school education and is able to communicate in English" as considered in 20 C.F.R. § 404.1564. (Doc. 8-2, at 22). The ALJ determined that upon consideration of these factors, Sisco's RFC, and the testimony of a vocational expert, "there were jobs that existed in significant numbers in the national economy that [Sisco] could have performed." (Doc. 8-2, at 23). The ALJ specifically identified occupations of bakery racker, binder machine feeder offbearer, and garment bagger. (Doc. 8-2, at 23).

Concluding his analysis, the ALJ determined that Sisco was not disabled from June 1, 1999, the alleged onset date, through September 30, 2001, the date last insured. (Doc. 8-2, at 23).

## IV.  DISCUSSION

Sisco advances two arguments on appeal: (1) the ALJ failed to perform the "special technique" which a mental disorder case required; and (2) substantial evidence does not support the ALJ's decision. (Doc. 19, at 3-5). The Commissioner responds that Sisco's mental health impairments were properly analyzed pursuant to the required special technique and that no additional evidence was needed. (Doc. 23, at 11-18).

### A.  THE ALJ ANALYZED SISCO'S MENTAL HEALTH IMPAIRMENT PURSUANT TO THE SPECIAL TECHNIQUE

Sisco asserts that the ALJ was required to perform a "special technique" of analyzing his mental disabilities, followed by gathering evidence and making specific findings as to how the disabilities affect his ability to work. (Doc. 19, at 4-5). This obligation was allegedly not

performed. (Doc. 19, at 5). Sisco states that he has demonstrated a disabling impairment for almost forty years, and that his inability to sustain employment would have been made apparent upon the required analysis.[6] (Doc. 19, at 5).

Social Security Regulation 404.1520 mandates that a "special technique" be used when evaluating the severity of a mental impairment. 20 C.F.R. § 404.1520a(a). To satisfy this requirement, the ALJ must first determine whether the claimant has a "medically determinable mental impairment," and, if so, determine "the degree of functional limitation resulting from the impairment." *Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x 800, 802 (3d Cir. 2009) (quoting 20 C.F.R. § 404.1520a(b)). In determining the degree of functional limitation, the ALJ must consider four broad functional areas and each area must be rated on a five- or four-point scale. *Maddaloni*, 340 F. App'x at 802. The ALJ's ratings of these four functional areas determine whether the claimant has a severe impairment. *Maddaloni*, 340 F. App'x at 802. If a severe impairment exists, the ALJ must compare the medical findings and ratings of the functional limitations to the criteria of the appropriate mental disorder "listing." *Maddaloni*, 340 F. App'x at 802.

The ALJ thoroughly went through every one of the required steps in analyzing Sisco's mental impairment. At step three, he determined that Sisco had the medically determinable mental impairments of residuals of traumatic brain injury and traumatic brain injury. (Doc. 8-2, at 18). At step four, he rated Sisco in the four broad functional areas, finding moderate limitation in understanding, remembering, or applying information; moderate limitation in

---

[6] Any allegation that the ALJ used an incorrect alleged onset date is meritless, as the ALJ used the date Sisco submitted in his application and there is no indication of a subsequent amendment. (Doc. 8-5, at 5).

interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. (Doc. 8-2, at 19). The ALJ proceeded to compare these ratings and medical findings to the listings, concluding that none qualified. (Doc. 8-2, at 19-20). The ALJ evaluated Sisco's medical findings to determine his impairments and then rated the degree of functional limitations resulting from his impairments in the four required areas. (Doc. 8-2, at 18-20). As such the ALJ engaged in the "special technique" and the Commissioner's decision will **AFFIRMED** on this ground.

B.   THE ALJ SUPPORTED HIS DECISION WITH SUBSTANTIAL EVIDENCE

Sisco also submits that the ALJ "fail[ed] to take the evidence … needed in a mental disorder case." (Doc. 19, at 4). Sisco does not specify which evidence was not considered, however he submits that it was impossible for him to work on a consistent basis, he had difficulty carrying on conversations, he could not avoid an unkempt appearance, he required a Veterans Administration counselor to help with receiving aid, and he was unable to drive a vehicle. (Doc. 19, at 4-5).

The ALJ supported his decision with substantial evidence. First, he took evidence from Sisco's longitudinal record showing full orientation and cooperation, appropriate mood, appropriate affect, normal speech, intact cognition, good insight, and good judgment. (Doc. 8-2, at 21). Second, he noted that Sisco did not receive mental health treatment during the period at issue. (Doc. 8-2, at 21). Finally, he noted that Sisco's daily activities showed an ability to function at the level dictated by the RFC, as he could do laundry, use public transportation, shop by phone and mail, manage money, read, and take part in Bible study. (Doc. 8-2, at 21). Sisco does not identify evidence of an unkempt appearance severe enough to warrant inability to be employed, nor does he explain how assistance from a Veterans

Administration counselor warrants a disability finding. (Doc. 19). Furthermore, the ALJ addressed Sisco's concern as to driving by including a limitation in his RFC that he never drives, and addressed Sisco's concern with carrying on conversations by limiting him to occasional interactions with supervisors and coworkers and never with the public. (Doc. 8-2, at 20). The ALJ supported his RFC with substantial evidence and Sisco has identified no unaddressed conflicting evidence from the record. (Doc. 19). Accordingly, the ALJ's decision will be **AFFIRMED** on this ground.

V.   <u>RECOMMENDATION</u>

Based on the foregoing, the Commissioner's decision to deny Sisco benefits is ordered **AFFIRMED.**

An appropriate Order follows.

Dated: May 1, 2020                          *s/ Karoline Mehalchick*

                                        **KAROLINE MEHALCHICK**
                                        **United States Magistrate Judge**